## STATE v. SHIELDS.

1. Under Comp. Laws, § 6492, subjecting to punishment every person who shall be guilty of an assault with intent to commit any felony, except an assault with intent to kill, an information averring that accused unlawfully, with force, did make an assault with intent certain personal property, which was then in possession of a certain person, from the person, and against the will of such person, then and there unlawfully and feloniously, by means and use of force, to steal, take, and carry away, sufficiently charges a public offense.

2. Accused and prosecuting witness met, and witness treated the former several times to drink.   While together, witness looked at his watch, which accused observed, and remarked that it was a nice watch. After they had been together some time, accused requested him to wait until the evening, when he would have some money, and also requested witness to go to a friend's with him to get the money.   After they had walked along a railroad, accused pointed to a light away from the road, and stated that was where his friend lived.   They left the track, and walked down into the weeds, when accused struck witness a hard blow on the head.   Witness struggled away from him, and succeeded in getting back into town.   *Held,* to sustain a finding that the assault was with intent to rob.

3. On a prosecution for assault to rob, the prosecution may exhibit a watch and chain carried by the prosecuting witness when assaulted, and give

evidence as to their value, where accused, before making the assault, had observed and commented on the witness having a nice watch.

(Opinion filed August 29, 1900.)

Appeal from circuit court, Minnehaha county. Hon. JOSEPH W. JONES, Judge

James Shields was convicted of an assault with intent to commit a felony, and he appeals. Affirmed.

The facts are stated in the opinion.

*Keith & Warren*, for plaintiff in error.

An information charging an assault with intent to commit any felony, should specifically state the acts done or threatened constituting such felony. State v. Walson, 27 Pac. 226; Sipple v. State, 46 N. J. L. 197; McLain on Criminal Law, § 224.

Under such a charge the intent is an essential element. There must be evidence not merely of the assault but evidence from which also the intent can be reasonably inferred. People v. Ross, 33 N. W. 30; Bostch v. State, 61 N. W. 730; Bishop New Crim. Prac. § 67; Garrely v. People, 70 Ill. 83; State v. Glover, 10 Nev. 54.

*John L. Pyle*, Attorney General, and *Charles P. Bates*, States Attorney, for defendant in error.

Under an information charging an assault with intent to commit any felony, it is necessary first, to prove the assault and then show the intent by proving all the facts and circumstances. State v. Glorvy, 10 Nev. 27; People v. Mize, 80 Cal. 42; People v. Landman, 103 Col. 580; Peterson v. State, 21 Am. St. Rep. 152

The same rule of evidence does not apply to a charge of an attempt to commit a felony, and that of an assault with intent to commit such felony. People v. Gardner, 98 Cal. 127; Milton v. State, 4 S. W. 574.

HANEY, J. Defendant was convicted of the crime of assault with intent to commit felony. The information (omitting formal parts) is as follows: "That James Shields, late of said county, yeoman, on the 13th day of December, in the year * * * 1899, at the county of Minnehaha and State of South Dakota, aforesaid, in and upon one Gustave Dréger did then and there willfully, unlawfully, and feloniously, and with force and arms, make an assault, with the intent certain personal property, viz, current money of the United States to the amount and of the value of one dollar, and one watch and chain of the value of forty dollars, all of which said personal property was then and there the property of and in the possession of, said Gustave Dreger, from the person and against the will of the said Gustave Dreger then and there unlawfully, willfully, and feloniously, by means and use of force, to steal, take, and carry away." It is conceded that the prosecution is under the following section of the Penal Code (Comp. Laws, § 6492): "Every person who is guilty of an assault with intent to commit any felony, except an assault with intent to kill, the punishment for which assault is not prescribed by the preceding section, is punishable by imprisonment in the state prison not exceeding five years, or in a county jail not exceeding one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment." The contention that the information fails to charge a public offense is untenable. The act charged as an offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended, and with such a degree of certainty as to enable the court to pronounce judgment upon a conviction according to

the right of the case.  Comp.  Laws, § 7249.  The form of the information has the support of high authority,  McClain,  Cr. Law, §§ 270, 281; Whart. Prec. Ind. § 251.  There is a marked distinction between the case of State v.  Watson  (Wash.)  27 Pac. 226, cited by defendant's counsel, and the one at bar.  In that case no intent whatever was charged in the body of the complaint, and the court very properly held that the accused could be sentenced only for a simple assault.  It is contended that the only offense proven, if any, was an assault  The testimony of the prosecuting witness on his direct examination is not contradicted in any material respect.  It is as follows: "My name is Gustave Dreger.  I live at Geneva, Iowa.  Have lived there four years.  I came from Illinois.  Have been threshing four years,—steam rig threshing machine.  My business has been working on farm.  I came from Geneva up here to see George Lamb. I worked for his father in Illinois.  Lamb lives eight miles west of Sioux Falls.  He is a brother-in-law of Louis Bauch.  Was visiting a couple of days with George, and helping Gus Stevens, working a month for him picking corn.  I came to town last Wednesday.  I got through working there.  I was going to Iowa, to leave my clothes there.  I was going to settle up, and stay a spell.  Came to town about two o'clock.  After I came to town, I walked around, and drank a couple of beers.  The defendant met me, I guess.  I didn't pay any attention to him.  I treated him beer.  First met him on the street some place.  I treated him some beer at Zentel's saloon.  After we met, and I bought the beer for defendant, he stayed with me.  Then it was after three or four o'clock.  I went down to the Illinois Central to buy a ticket.  Defendant went with me.  I bought my ticket, and sat down on the seat,

and went to sleep, and when I woke up he told me, 'Your train is gone.' I says, 'Then, I can't help it.' He came to me, and said, 'Your train is gone.' He was still in the depot. I opened my watch to get the time, and he says, 'You got a nice watch.' That was when we came out of the depot on the sidewalk. He says, 'You have got a nice watch.' I says, 'Yes it is a good watch for me.' Then we went in town. He followed me,—came after me,—and I treated him again to a couple of beers. We walked around on the street. Then he said, 'You wait until seven o'clock, and I get some money.' I say, 'All right.' We came out of the saloon, and go back on the sidewalk across Eighth Street Bridge. We walked on the railroad track along, I don't know how far; about forty rods, I guess. We crossed the Eighth Street Bridge before we got to the railroad track. We turned to the right. I went with him. He said he got a good friend over there; to come on, and get some money. We went down the track, about forty rods down from the bridge on the track. We walked down, and he said when we was down: 'You see that light over there? That's where my friend lives.' He says, 'Come on, let's go down there.' That was towards the light. When we came down from the track in the brush and weeds he turned, and knocked me right in here [indicating on left side of head], He struck me a hard blow. I don't know what he had, but it hurts me yet right here. Q, What effect did the blow have on you? Did it make you stagger? A. This way, and then I give it to him with a knife [indicating how it was done]. He struck me the first time, and then he tried to strike me the second time, and I pushed him away with this arm, and then I got away, and came back in town, and got police. The light he showed me was

southeast from the railroad track. We turned to the left. The track was running south. There were willows, large grass and weeds where we went down off from the track. The ground was lower than the track about four or five feet. It was dark in that place where we turned off down in the bushes and weeds where he struck me. There was a house away off southeast. The watch I spoke about was my watch." If this testimony be believed, there is no other reasonable inference to be drawn from the unexplained conduct of the accused than that he intended to rob the prosecuting witness. There certainly was an assault. Why was it made? The time, place, and circumstances all indicate a design to commit robbery. The accused had observed that the prosecuting witness wore a valuable watch and chain. For what was he leading this partially intoxicated stranger into the place he did, and assaulting him without provocation or warning, if not to steal from his person? The intent with which the accused made the assault was a question of fact to be determined by the jury, from a consideration of his conduct in the light of all the surrounding circumstances as shown by the evidence. They found that he intended to commit robbery, and we have no doubt, from reading the record before us, that such was his intent.

There was no error in allowing the government to exhibit to the jury the watch and chain carried by the prosecuting witness when assaulted, and to introduce evidence as to their value. The actual and apparent value of these articles were material facts to be considered in ascertaining whether robbery was intended. That this laboring man was sleeping in a railroad station, and visiting saloons, with a watch worth $40,

and that the accused had observed and commented upon its quality, are circumstances strongly tending to establish his guilt of the crime charged.

There was no error in the exceptionally fair, clear and comprehensive charge of the learned circuit court. It gave the law correctly, and covered every proposition contained in the defendant's requests which should have been given. The judgment appealed from is affirmed.